Devin Burstein on behalf of Mr. Silerio-Ramirez, the Fifth Amendment, a guarantee of due process protects the defendant from consideration of improper or inaccurate information at sentencing. And that's this court's decision in Safferstein. And what follows from that is that, quote, unfounded assumptions or groundless inferences may not, consistent with due process, form the basis of sentence. But that is exactly what happened here. Counsel, may I ask a question? Absolutely, Judge. Were the records of Silerio-Ramirez's 2005 convictions fingerprint matched? We do not know. And that was one of, so jumping down, that was one of the major problems and one of the distinguishing characteristics here. What do we know? There's this murky, the briefs keep talking about a collateral, what is that? What is that, a collateral reference? We also don't know that. Okay, so there's a pre-sentence report. There's a pre-sentence report and that's it. And I'll happily walk you through it. And it represents that there's these prior convictions. Correct. And there was a colloquy about it. Correct. And that's it? That's what I have in the record? We're not missing anything? You're not missing anything. And if I could just extrapolate. They may have been fingerprint matched. If I can extrapolate a little bit on that, what counsel below says, counsel below says, we don't even know how these are gathered if they're fingerprint matched. The court questions the probation officer and says, do you stick with this based on the pre-sentence report? And the probation officer says yes, and on the basis of the collateral response. But there's nothing in the record to indicate what this collateral response is. And there's also an absence in the record of any documents whatsoever, not a rap sheet, not an abstract, not a minute order. But isn't there a representation that it came from a rap sheet? Yes, but we don't know that rap sheet. I'm just, what I'm saying is none of the underlying documents. It is the PSR and the pre-sentence report and the pre-sentence report only. No evidence of fingerprint matching. And the reason why I keep saying no evidence is because this is, of course, the government's burden. They have to put forward sufficient evidence to establish the conviction. Right, but you can see, wouldn't you, that if they're, sometimes these records get purged. Sometimes they're really old. I appreciate these are 2005, but we have case law where records were of prior convictions were so old they had been purged and the court knew that. And in that instance, the court was permitted, the trial court was permitted to rely upon a computer printout, a rap sheet. I think we only have case law where that has happened and there's a showing that there's been fingerprint matching. Correct, on the latter point. So there are two prerequisites in all of the case law that are absent here. One we see often, and that's the one your Honor referred to, is the fingerprint matching. That's in Alvarado case and in Langer case and there's a few others. Those are the fingerprint matching. And then we also have the circumstance where there's an absence of a denial and the court will repeatedly say, look, the client just said the government didn't meet their burden but hasn't actually denied this conviction. And that's another thing the court says. In that instance, when we're weighing preponderance, we have a PSR and a fingerprint match and nothing on the other side, you know, ergo the fingerprint and the PSR have to win. But here we have an affirmative denial and an explanation and it's not, it's not as if counsel just said it's not him. She explains and she says, we have denied, first in the PSR objections. She explains that it's a very common name. It's a very common name. Right, but let me ask you this. There's also a representation by the government that they had requested, I think certified copies of the judgment or had requested original DACA or something. Did defense counsel... Defense counsel is the one who requested it. Did defense counsel ask for a continuance to wait to get those documents? It sounds like they were in route. Well, I think it's the defense counsel that is in the initial PSR objections, not the government requesting, but it's defense counsel. Forgive me if I said that I misspoke, but at any rate, there's, it's clear in the record that they had been requested. And my question for you is whether or not, and they weren't available at the time of sentencing. And my question is whether defense counsel asked for a continuance so that they could be obtained. I don't think so. But again, this would not be defense counsel's, that would be counter to their client's interest. The answer to my question is no. Well, wait a minute. Count, counts, you think that's counter to your client's interest? Well, at that point... If they're really disputing the prior conviction, I mean, you can't have it both ways, counsel. Absolutely, Your Honor. All right. So the government has to be given an opportunity to meet its burden. Certainly. The government could have requested a continuance. And there wasn't a request for a continuance by either party. Right. Thank you. There was a request for an evidentiary hearing on the other, other... That's, that's, certainly true. There was a request for an evidentiary hearing on the other one. But your, but defense counsel basically took the position, this is the government's burden. It has to be preponderance, at least 50 percent, 51 percent. Correct. And, and, and, and based upon the case law that you've offered, is that your client denied it. Correct. And said this is a similar name. Correct. So then what you're saying is, is that the evidence at that point, without any authenticity, to establish that he was, in fact, the same person who was alleged to have committed this crime, then it was at least 50 percent. Correct. Now, and, and let me ask you this. Is, doesn't the Ninth Circuit case law establish that there has to be something other than what the probation officer says, in terms of what I understand it to be, is that my opinion is that these generally are accurate. Isn't that the case law of the Ninth Circuit? That the NISR, standing alone with no evidence of fingerprint matching or no lack of denial for, trying to put it in the, in the positive, is sufficient. That, that has never happened. And that's what the... So if the defendant denies the prior conviction, what's the government have to do, in your view, under our case law? There's fingerprint matching. That would be one, that would be one instance. What else could they do? They could provide, they could get the records and provide them to the court, and perhaps there would be some... So to be clear, the records, you're talking about the original judgment or certified copy? Certified copy, yeah. Where have we said that? Well, the standard is, is just preponderance. So you were, I was taking your question to say exactly what would, in my view, of what they could do to meet the burden. Okay. So providing, if that was your question, Your Honor, I think providing some of the underlying judgments, providing evidence of fingerprint matching, you know, some kind of declaration. The rules of evidence are not the same, obviously, at sentencing. So a declaration, perhaps, from the Arizona authorities saying, we have fingerprint matched these, they've been linked up with the FBI database, you know, and therefore, we find it, you know, we are certain or with a reasonable degree of certainty. So if the government had made a more complete explanation of what this collateral reference verification had been, would that be sufficient if it had been a telephone call or some kind of a communication to verify that the records had been fingerprint matched? Would that be sufficient? It would be a harder case for me. I don't want to stand here and give you a yes or no answer, if that's okay, because it would be hard. I would need to hear the exact nature of it. I would certainly think a certain, you know, a declaration, something under oath. You know, we have the Vargas Amaya case, which makes clear that, you know, an oath signed under oath is of critical importance. So I would. What about, what about the argument made by the government that, basically, the defense counsel came to court and decided that this was an issue they were going to raise for the first time? So in other words, they were surprised. So then, at that point, why didn't your client say, or counsel say, you know, okay, I don't have a problem with a continuance in this matter. I realize that this was raised for the first time. You know, if this had been brought to my attention for the first time in court, I wouldn't have been very happy about it. And although the burden is on the government, and always on the government, it seems to me that if there had been what appeared to be a legitimate basis upon which to make this argument, then I would have turned to defense counsel and said, do you want another hearing? And strategically, maybe defense counsel would have said no, because why? Because maybe a hearing would have established a preponderance of the evidence, right? So that's why, in some cases, the defense counsel or the government objects to all of this. Right. Was it raised for the first time at the hearing? No. It was not raised for the first time at the hearing. We start on August 24th of 2012 with the PSR objections, and in the sentencing papers, we note that there haven't been, the records haven't been turned over, and that they've been requested. And then when we get to sentencing, they note that there haven't been records. Counsel, when you say we note, in response to the PSR, how was this objection raised prior to the hearing? In what form? Well, I believe the PSR objections state that they haven't received any records, and that so therefore, the conviction should be stricken. That's the specific raising. You mean, in the objection, and that was brought to the attention of the judge? I'm sorry, I missed that. Yes. I mean, that's what you're not making clear. It's in the written objections to the PSR. It's in the objections that, in other words, it was something that was brought to the attention of the judge, and so the response by, in the pink sheets or whatever they are, by the probation offices, we don't need them? Is that it? Yeah, let me quote directly, so that we're absolutely clear. And I'm on page three of the record. The alleged... You're talking now about the 2005 misdemeanor. Right. The alleged 2005 misdemeanor is the title. So you have, I mean, I've worked through this. Yes, Your Honor. The 2005 misdemeanor. Right. And so, Salerio, he objected to the PSR criminal history point, and affirmatively denied that he was the guy. He was convicted. Correct. That's not me. It's somebody else. Correct. And probation didn't receive certain requested court records before the sentencing hearing. They asked for them, but they never got them. Correct. Is that right? And now the court can rely on information in a PSR only when the conviction is not in dispute. Correct. All right. And now without that one point, he got one point allocated for that 205 misdemeanor, he would have had a criminal history score of six. Correct. Which would have placed him in Category 3 with a sentencing range of 63 to 78 months. Correct. Which was not what his range was when he was sentenced. Correct. 77 to 96 months. Okay. Then we come to the 205 attempted theft of a vehicle, and that wasn't considered at all. Right? Correct. All right. Now we... Not for purposes of this appeal. Not for purposes of this. Yeah, that's what we're dealing with here. So then we come to the 2010 illegal reentry. That's where the guy was hiding behind a trash can. Do you remember that? I remember that. A trash can. Okay. Perhaps I do. And then your client objected to the court's inference from that 2010 arrest report that was one for illegal reentry that he previously smuggled marijuana. Correct. Now, he was found 75 yards away from the abandoned SUV that had a little over 2,000 pounds of marijuana. The police report didn't connect him to that vehicle or the drugs and didn't identify him as a driver or passenger. There's no allegation that his property or fingerprints were in the car. The dog alerted to the marijuana, but when they brought the dog over to Celerio, he didn't alert at all. So he... There's nothing to tie him in to that marijuana in the vehicle. Okay. So now he was charged there. There were two points added, right? Right. So now we come down to the 2010 arrest report. And then here, the argument is that that trash can, 2010 illegal reentry, that sentence should be vacated because the district court relied on unreasonable inferences that Silverio was the SUV and had previously... I can't read my own writing. That perhaps he had previously smuggled. Had previously smuggled in marijuana, yeah. Right. That was the challenge finding. Yeah. Yeah, that was the challenge finding in 2010. But what we're actually dealing with is the 2011 sentencing for arrest for possession of marijuana with intent to distribute, right? Correct, Your Honor. You have everything correct. And he was under supervised release for a violation that occurred on November 18, 2011. And that supervised release was under the 2010, the trash can. For illegal reentry. Right. We have the 2010 illegal reentry. That was then. So that's the same one. Yeah. Okay. You have it right. Well, you know, it's not easy. No, I apologize for that, Your Honor. Yeah, it'd be nice to have a little diagram sometime. Yes. So if we do all these things that you ask... Yes, Your Honor. Then the point allocation would be seven. Six. It would be... It would be six, Your Honor. No, seven. You got two points from... It was seven minus the one point that we were challenging. For the prior. For the prior. And just so we're clear... So where are we now? The criminal... Your Honor, the... Sorry, Judge. You say it was six? It would be six if you were successful. Correct, Judge Silver. I have to tell you, the sentencing guidelines are an abomination. Agreed. And there's very few judges around that I know that sentence under the old way, which was a much better way. You know, this way... Yes. We filled all our prisons up. I know. And we have a big national debt now. Well, at least we have Booker. That helps a little bit, Your Honor. We have Booker, but, you know, it's unconstitutional, but you've got to think about it anyway. Yeah. So his range would be what then? 77 to 96 months? No, Your Honor. You had it right the first time. If you agree with my argument on this point, it would bring it down to 63 to 78, which is what Your Honor had quoted earlier. So you had it right. Yeah, I had it right. You do have it right. I did have it right. Okay. I looked at the wrong column. So... Anyway, I'm the Chief Financial Officer. Your Honor, you've done an amazing job of summarizing my argument. Four and two is six. You're right. Put them in Category 3, 63 to 78 months, huh? Yes, Your Honor. Yeah, with all these adjustments. And so he got 77 months, right? Right. You could send it back. The judge could still give him 77 months, right? Well, under Booker, the judge could do whatever, but it would be we would assume that if the low end was sufficient the first time, we would assume that... There's nothing more powerful than a discreet judge. Well, I believe that Judge Sobraw had practiced before him for six years, and I would highly doubt that he would not take this court's judgment about his criminal history calculation and adjust the sentence. When you say adjust the sentence, I think this has been very helpful for me. Now, I understand, too, that it's 63 to 78 months if, in fact, we don't take into account or if the criminal history category is readjusted, and it's a six, 63 to 78 months. Correct. So what I believe my learned colleague, Judge Pregerson, is asking is what difference does it make? Because in a couple of respects, number one is the argument that the court should not have taken into account the police report, unreliable supported evidence that he was involved in smuggling drugs. That doesn't affect the criminal history. That doesn't affect the guideline range, right? Right. They're separate arguments. Right. So assuming that the question is harmless error, in effect. So we send it back. Right. And let's say there isn't enough evidence there. Okay. Let me give you that. Okay. There's not enough evidence in the record for him to have made that finding. Yes, Your Honor. Okay? We're still at 63 to 78. Right. He gave him 77. Now, truly, he did say something about, well, low end of the guidelines. You know, that seems to me where it should be, that type of thing. But why is it that you think it's going to be any different? I mean, you'd have to be able to take what he said almost robotically, is that, okay, now I cannot consider this unsworn police report about previously smuggling, so that means that it should be only 63 months. He's still within the guidelines. And under Booker, which you apparently like, under Booker, the court can sentence him anywhere within that. And as a matter of fact, there has to be a reasonable basis upon which he cannot do that. So we send it back for resentencing. So then where are you? The judge could take into account anything else the United States government brought forward and, I suppose, bring in better evidence on this unsworn police report. Your Honor, you're right. And that is also right of every time this court reverses for a sentencing problem. I want to quote. This is an important issue. When there has been an error in the calculation of the guidelines, and it results in a lesser guideline range, this court, there is no harmlessness concern. And I'll quote from Gunning. Our precedents are quite clear when a district court, and this is in italics in the court, could have lowered a defendant's sentence. We have presumed prejudice and remanded, even if we doubted the district court would have done so. Even within the guideline range? Even within the guideline range. Okay. So there is never a harmless error. There is never a harmless error in this circumstance, even when, and we have a case, I believe it's Munoz with Judge Burns saying, I don't care what the Ninth Circuit says, I'm going to give the same sentence. The Ninth Circuit said, I'm sorry, you have to correctly calculate the guidelines and you have to start with the guidelines, and we're not going to presume that you would do the exact same thing. That's point number one on the law. It's absolutely 100% clear on this issue. Point number two, the government hasn't raised harmlessness. The government has, therefore, waived the issue. It hasn't raised it as to either issue. I wanted to. But we have an obligation to raise it on our own, don't we? No. Don't we have an obligation? Isn't it, I mean, are we precluded? We're not precluded from raising it, are we? You're probably not. Why would it be a waste of time if we sent it back and it would be the same sentence, is what I'm asking. But more importantly, you're saying there's a case right on point that says, even if there's the possibility. Yes. Myriad cases right on point. Every single case with the guidelines, this is always an issue. But I did want to get back to your question. You see, I may have created the wrong impression. I'm glad you're doing this. Somebody's got to be there and watch these things and make sure they're followed correctly. Right? Yes, Your Honor. That's your job. That is absolutely my job. And you're doing it. And you're doing it very nicely. Thank you, Your Honor. And I don't, you know, we've gotten so big. There was a time I knew half the district judges in America. Now I don't even know half the people in downtown Los Angeles because it's just, you know, everything has just become so complicated and there's so many people around these days and we don't get to see one another very often. But, no, I think you did the right thing doing this and it got me to thinking about it and I hope you're right. The judge says, well, I'll give you the lower end of the guideline range. Now it's 63. You see what he does.  You know him better than I do. So it's not Munoz or Judge Real. So you've got a good guy. We do, Your Honor. And I know I'm way over, but Judge Silbert did have a question. I never got to answer it. And so if I could, I would be greatly appreciative. I just wanted to give you the quote, Judge, from page three of the excerpts of record. It's the very first criminal history objection. And it notes that probation did not produce any records related to this conviction and if probation has not received the records for this case, then it should be stricken from the PSR. So this was clearly before the court. PSR objections timely filed. So it wasn't sprung upon the district court judge at the last minute. Okay. Let me ask you, would you give me again, I'm sorry, the name of the case that says basically in the line of cases that it is never harmless error if you find that something that was presented at the sentencing that would not affect the guideline range. This does affect the guideline range. No, no. I'm talking about the unsworn police report. Oh. About smuggled drugs. You know, that's the. I'm sorry. Okay. I think I had gotten confused because we were. So the line of cases. There is also, there's the issue, the other issue about the, you've got the two issues. Yes. So one is the misdemeanor conviction. And I understand your position. But what about this other issue? Is that really even relevant? Oh, yes, Your Honor. It is certainly relevant. He referred to it as a prior, didn't he? He only had that. He referred to it as a prior, didn't he? He did refer to it as a prior. But let me just give you, there's, I'll just give you the language because I think it's helpful. From Cruz Gramejo. It's C-R-U-Z hyphen G-R-A. Well, that's okay. And it says that, it describes sentencings that are harmlessness. And the error is harmless. It's not harmless. It's harmless if it did not affect the district court's selection of the sentence imposed. Here, the district court specifically says that it's an aggravating factor, that it should be considered and I will consider it. Now, we have to take the district court at his word there. So that means that even if that there is no proof that, in fact, he smuggled drugs in the past and it doesn't affect the guidelines, you still reverse because of what the judge said. Right. And can I give you the quote from Barry because I think it's even more helpful. It's okay. We'll find it. The Barry case. Go ahead. It says, there they're finding plain error. And it says, our concern for the district court's reliance on the arrest report is not mitigated by the fact that the district court did not apply an upward departure. The guidelines are, after all, purely advisory. And unsupported speculation about a defendant's background is problematic, whether it results in an upward departure, denial of a downward departure, or causes the sentencing court to evaluate the 3553A factors with a jaundiced eye. And that's really the key here. When the district court found and improperly found that Mr. Solerio was a recidivist, he, on the record, considers the 3553A factors with a jaundiced eye. He says, I find this to be a second offense. It's an aggravating factor, but it simply shouldn't have been because the reports don't establish Mr. Solerio's connection to that vehicle. And if they did, why not just have a hearing? That's all we're asking for. Okay. And if we remanded it. Yes, Your Honor. We don't remand and tell the government, you cannot, in that sentencing, now present adequate evidence to show this. It starts over. We would be happy with a hearing on the SUV issue, Your Honor, certainly. That's what we wanted the first time, and we'd be happy to put the agents on, test them with cross-examination, and find out the truth. Okay. Thank you. That's the trash can case. That's the trash can case, Your Honor. Absolutely. Thank you very much. Thank you, Your Honors. David Finn for the United States. If I may, I'd like to start with the 2005 Arizona conviction because there seems to be an issue there about the record that I want to correct. I want to correct the record that defense counsel never, before coming to sentencing, objected and said, it's not me. I didn't do it. I was in Mexico. I was in jail. What was the objection? The objection was, there's no conviction documents, therefore you shouldn't consider it. That was the objection lodged, and I urge the court to reread that sort of record. I have. Why wasn't that enough? That was the standard objection that Martin Cuevas and the line of cases that we cite, that's the standard objection. You don't have the conviction documents. They've been purged. And this court has come back repeating it. I didn't say purged. Well, you don't have the conviction documents. Right. That's what I said. That's Martin Cuevas. They're purged. You don't have the conviction documents, but you have the rap sheet. And if there's no actual dispute, there's no, it wasn't me, I was in somewhere else, then the rap sheet and the testimony from the probation officer is sufficient. So coming up to sentence, that was where the case stood. There was just the objection, we don't have the conviction documents. So you don't think you were really on notice? No. No. And I don't think probation was either. Okay. So you got notice at the hearing. Yes. Let me walk the court through what happened at the hearing. Defense counsel showed up at the hearing, went to the probation officer, confirmed that they still have not received those conviction documents, then came to the podium and said, we have denied that he has that conviction. First of all, that's plainly not accurate. They did not deny he had that conviction. Okay, they did at the hearing counsel. They did at their, if that counts, that factually inaccurate statement counts as a denial, then that's just a blanket denial. It's no different from saying the conviction documents. I think the government just asked for more time to get the documents. Well, I don't think that the government felt at that time it was necessary because we have the line of cases that the government's relying on that says that the rap sheet and the collateral request are sufficient. What's a collateral request? It doesn't tell me in the record that there's a fingerprint match. I don't know what a collateral request is, counsel. The collateral request, it is vague. It says a response from the District of Arizona received by the probation officer confirming the conviction. What is that? Presumably he called the jurisdiction of conviction and confirmed that that conviction was in their records. That's what I think, too. I think that's a reasonable inference. I mean, I think if there had been a fingerprint matching, it would have said more than a collateral reference. It sounds to me like, and I assume, that it means that somebody picked up a telephone. But at the hearing, there's no question they said, hey, this is a really common name. This guy doesn't think it's him. So at that point, it just seems to me the obvious thing to do is to give the government more time to prove it's prior. Well, let me address that because that's exactly what they said afterwards. The first defense counsel says, Jose Solario is a common name. First, completely, there's nothing in the record. But that's not what the police report said. What do you mean there's nothing in the record? Well, there's nothing in the record that in Arizona, in Maricopa County, Arizona, Jose Solario is a common name. But even if it is, the police report in this case. Why do they have to have something in the record to show that? That's their objection. I'm just saying they're throwing out a generic possibility here that it's a common name and it could possibly be somebody else. That's what defense counsel said. But this is different than, certainly at this point in the timeline, putting the government on notice of what the problem is. Okay. And they also, importantly, said not just that it's a common name, but that we deny the conviction. So if they had just said, well, what about, hey, this is a common name, and that may be something that we hear often. But he said he claims he wasn't convicted. So at that point, as I mentioned earlier, I wouldn't have been particularly happy to hear that for the first time, but actually the circumstances, as I better understand them now, were that counsel did make an objection and asked for the documentation because her client had claimed that it wasn't him. She didn't receive the documentation. So inferentially, why did she want the documentation? Because she believed it wasn't her client. So at that point, I may not have, as a judge, not been happy to hear that. But the government could have said, Your Honor, we can prove it because you know the case law has been presented by defense counsel. What the obligation is, when there is a denial, a clear denial, not just, oh, his name is similar to other names. He denies it. Why not ask for a hearing to establish by a preponderance of the evidence? Well, the reason there is no hearing asked is because I think that the evidence here that was before the district court satisfies the preponderance of the evidence. I'd like to point you to the PSR and the actual information provided to the court. We have a situation here where there's an arrest in February in Maricopa County for a person that the police reports identified as Jose Luis Salerio, who gives a false name. Three months later, in Maricopa County, we also have a person identified as Jose Luis Salerio, who is also 18, in the same county, in Arizona, three months apart, committing criminal activity. That alone, and the rap sheets and the collateral request confirming that the earlier conviction did, in fact, exist, is sufficient to meet the preponderance of the evidence standard. That alone is enough. Well, that's enough under the law unless, as counsel has said, there's case law that establishes if the conviction is denied and there's a basis upon which it is denied, that is some corroboration, look, Your Honor, this is a similar name, then it's still the government's burden. Yes, even with that explanation, it's a similar name. That's not enough. It's a denial, a flat denial, he didn't commit this. And as a matter of fact, the circumstances are, she asked for the documentation to establish it. So that should have put everybody on notice, including the probation office, that this was something that they weren't going to accept. It's his position that he denied this. And the probation, and when they made that objection the first time, again, not saying it was not me, just saying, blanket, the government has not submitted the conviction documents. And you're saying that that was such a vanilla standard that it didn't really put you on notice. It didn't really put probation on notice. So you didn't really get notice until the hearing, so then you come back all the way to the question we keep asking you. Why didn't the government just ask for more time? And if this goes back, doesn't the government get more time? True. And the issue here is that the government had already met the preponderance, just looking at the information. What if we think that it didn't? And if we say, you need to, when there's an objection, you need to prove this up, and it goes back, doesn't the government then have an opportunity to prove the prior? Well, there's an issue here where this blanket denial, it wasn't me. So is the answer to my question yes, counsel? The answer to your question is yes, but. Okay. Yes, but. I just want the yes. It just makes me feel better to get the question answered. So now you can go on with the but. We would get more time, and we would establish that, in fact, Arizona rap sheets are fingerprint correlated, and we'd make that additional record. But. Distinguish the case offered by defense counsel, that the information that you say establishes, without even defense counsel standing up and saying it's not him, he didn't commit this crime. By the way, Your Honor, these are similar names. Distinguish and tell me why the case he's relying on is not accurate, that that on its face is not enough. You don't have the rap sheets. You have a well-meaning probation officer acting in good faith who says, well, gee, generally these things are reliable. These are items that I rely on. We have, this is highly prejudicial to the defendant, because the guideline range goes up 12 a year, so that's why it's the government's burden. And why, even though a well-meaning probation officer acting in good faith, giving an opinion, why is that enough? And what's the case law that you're going to give me that would distinguish the case law offered by defense counsel? First of all, there's absolutely no case that says that when the defendant stands up and gives a blanket denial that that somehow changes things. I'm sorry. I may have missed. I spoke too much. Your position is you had enough without the denial. Okay. What's the case law? Counsel has said that's never enough. That's not enough based upon a case that I didn't write it down, but he says that's not enough. I would refer the court then to United States v. Felix, and that's a Ninth Circuit case where the defendant did stand up and say, look, that PSR is incorrect. In fact, I got diversion. That sentence was expunged. That put probation on notice. Probation went back and did a collateral request to that district and confirmed, in fact, over the telephone, that that diversion never happened. That conviction was still there. That was the response, and the collateral request and the rap sheet showing that the conviction did stand was sufficient. Even in that case, that was enough. But at least there we knew what the collateral request was. So it seems to me the burden, I am not anxious to issue case law that really gums up the trial court. I mean, I recognize how many times a day this happens in the Ninth Circuit, and so that's why I'm asking you. It's not to break your over the coals. It's to see how hard would this be to do it right, because it seems to me the burden would be minor if there had been a better explanation on record of what the collateral check was, counsel. And I think you're right with the concern of gumming up the trial courts here. If somebody was allowed to stand up and give a blanket denial, it's not me, I didn't do it, to the PSR, that would put probation, probation's job would become exponentially harder, especially for these older misdemeanor convictions where the conviction records are not as readily available for as felony convictions. Or sometimes not available, period. Sometimes purged. So how hard would it be to explain what the collateral check was? Isn't this just sort of a goof up? I'm sorry. Isn't it just a goof up that just didn't get quite enough explanation? I don't know that we're asking to really raise the bar here. It just seems pretty clear the government has the burden of proof. No, I think that the collateral, the issue of the collateral request is that the court presumes, and the case law is clear, that the court presumes that the probation officer is telling the truth. There's no reason to think that they're doing anything appropriate. No one's questioning anybody's veracity. So when the probation officer stands up and says, look, we've got police reports, we've got rap sheets, and I made a collateral request to the district, and they confirm that the conviction exists. Well, they didn't say that. They said it's a collateral request. There's just no explanation of what that is. And so I think I'm just beating a dead horse. But you see my problem. It's in the addendum to the probation report. Right. Apparently when they objected, probation called the district and said I've received a response from the district. Right. And the reason it's difficult, and the stars are kind of blind in this case, is because the representation was, the objection was, hey, that's a really common name. So it's easy to imagine a collateral source, if it's a phone call, that's not going to really be sufficient. You know, if they told me that they matched the date of birth, if they told me they matched, you know, they had a photo from the prior arrest, or certainly fingerprints, you know, anything else. But there's just no elaboration. A couple points I want to make on that. There is, you know, the date of birth's matched, the location of the arrest matched. It's three years apart. The name is not Jose Luis. It's Jose Luis Solerio, which is less common than just Jose or Luis. But I want to bring up a couple other points about that, too. The rap sheets in this case, the fingerprint rap sheets have been turned over. They're always turned over at the initiation of a criminal offense as standard discovery. So they had the fingerprint rap sheets. And one would expect that if this conviction had not shown up on those fingerprint rap sheets, that would have been brought to the court's attention. Wait a minute. Wait a minute. We're talking about sentencing. We're talking about the obligation at that point. You seem to be switching the burden here. We're not talking about when he was initialed. We're not talking about a preliminary hearing. We're not talking about other documentation which is prepared by the pretrial services officers. So, counsel, let's not mix this up. This is the sentencing. Only the sentencing. The government has the burden. Justice in trial. As in trial, you wouldn't say, gee, pre-sentence or the pretrial services people came in and they did this and that. You have to have documentation. If it's not admissible, it has to be reliable. And the word collateral that I inquired of the district without saying where I inquired and who I spoke to and whether or not this was the clerk of court or somebody else is on its face not enough. Unless you've got case law. As I said, this Felix case, I'll take a look at it. And I'd also encourage you to reread Martin Chavez that I cited in my case too, which it talks about we assume that the probation officer, when they make the collateral request and they stand up, I have confirmed the conviction, they are telling the truth. And that's what happened here. We have confirmed the conviction by a collateral request. Now, I don't want to be seeming like I'm shifting the burden. What I'm saying is you don't know how they confirmed it. I remember one time I had an experience where a witness was on the stand in a big drug case and the witness had a very unusual name. And the U.S. attorney was out there, asked that witness if the witness had ever been convicted of a felony. The witness said no. And then I looked at the U.S. attorney and I told him to come to the sidebar with the defense counsel and I said, have you got a certified copy of a judgment of conviction that I can look at? No, no, I don't have it, Your Honor, but I've got something better. I've got a rap sheet. I said, okay, let me see the rap sheet. And everybody was there. And I looked at the second page and there was a picture. I said, look at this picture. That's not a picture of the guy sitting in the witness stand. Very unusual name. Maybe there are only two people in the country that have that name. And I went over to the witness and I said, I'll look at your driver's license. I'm like a cop. I'll look at your driver's license. He showed it to me. I looked at the other picture. There's no way. I looked at Social Security. Nope, no way. And I went back. And, you know, the U.S. attorney got a rap sheet. He didn't get the certified copy. And it was just all wrong. And I had to tell that to the jury what happened. So you've got to be careful of all these things. And, you know, another thing that bothers me is probation officers used to be social workers. Now they're just pushing the numbers around. Not good for the system. They'll change one of these days. I understand that. And, you know, I see my time is up. May I respond to that briefly and then maybe very briefly address the second point in the brief? Yeah, go ahead. First of all, if this was an issue where he had said something specific or actually put it in dispute, no, that wasn't me, I was in Mexico. No, I was in where I supposedly have been living my whole life. Then I think that that would have put everybody on notice. And that would have been an issue where, look, maybe we would have done that extra mile. But here what we had was the two 18-year-olds named Jose Luis Samario getting arrested and convicted in Maricopa County, Arizona, three months apart from each other. And that's the information, plus the rap sheet, plus the probation officer with the collateral request confirming it, meets the preponderance of the evidence standard. A blanket, vanilla denial, it wasn't me, it doesn't change that just to say it wasn't me. I'm denying that conviction. I think we understand this part of the argument. You're way over. Do you want to have a minute to discuss the other issue briefly? Briefly. I'll try to sum it up. Let me ask you, wasn't a probation officer waiting for some paper report to come in? Yes, and they often, sometimes it's a- Waiting for something else to come in. Yes. And did that ever come in? I'm not aware of that here. On the second issue of the brief, I just want to point out that the 2010 arrest, standing alone by itself, would not have, I readily admit, would not have been enough to charge Solero Ramirez with smuggling marijuana. The scales there on those facts would have been 50-50. Maybe it's him, maybe it's not. But when he does the same thing ten months later, driving an SUV chock full of marijuana through the desert, and abandons it and tries to run from police, that scale of 50-50 is tipped. So opposing counsel's argument is this is not exactly a signature crime, that there are lots of cases involving SUVs loaded with marijuana coming across the border. What's your response to that? You know, a signature crime for this defendant, this defendant the first time drove an SUV through the desert just east of Clesico, California. That's through the actual desert. We got that. Drove it into the town, and then when police got behind him, he bailed and tried to hide from him. Again, ten months later, this same defendant drives an SUV chock full, this time instead of 189. That presupposes the fact of the issue is whether it's the same defendant. And his argument is that this is not a signature crime. So what would have been helpful to me, and maybe you can answer this, is he was found 75 yards away hiding behind a dumpster, and there's this SUV left in the middle of the intersection with the driver's side door open, and it's loaded with a lot of marijuana. So I have to believe the government would have lied to make a charge if they could have made a charge, and they couldn't charge him. Admittedly, a different burden of proof, as you've explained. But I don't have a good picture of the scene. If there were a lot of people around in a marketplace or even, I guess, in a neighborhood, you know, depending on the time of day, if there was reason to think it could have been somebody else, that would be one thing. If it was a very unusual hour for people to be out, if there was nobody else around, that would have been very helpful to me. But I didn't see that here. So I couldn't tell how incriminating it was that he was 75 yards away. He had reason to hide because he was there illegally. Well, as far as the time of day, the pursuit starts at 5.30 a.m. in December where it's dark, and it concludes about 6.30 when the officer responds, and shortly thereafter it comes across the vehicle that's abandoned. So we're assuming it's somewhere between 6.30 and half an hour to an hour. Anyway, it is a time of day where it's not customary to find somebody hiding in an alley near trash cans when police approach them. Well, I would imagine that at any time of day, somebody who's in the country illegally is going to jump behind anything you can jump behind. If sirens are blaring and police are coming, right? So I'm trying to figure out if he just jumped behind a garbage can because the police were coming and chasing somebody else driving the SUV, you know, how incriminating is it? Or is it likely that if there was nobody else around, that's completely different? But I don't have that on this record. Again, the first arrest stating alone, I don't think, you know, looking at that alone is not going to provide the court with the preponderance of the evidence. Again, the standard is clear error for Judge Straubrode to find the preponderance of the evidence. It's a very deferential standard. The first arrest considered alone is improper. He considered the entire record, both arrests. And he can go back there and say the first time if I had just brought this up, you know, some of that stuff, you know, my colleague does a great job saying, oh, you know, maybe the dog didn't hit on him on the canine. None of that's in the reports. That's fine. The only, what's indisputed in those reports is that Solario Ramirez was found 75 yards away from an SUV chock full of marijuana. That's the most important part of that report. That's not in dispute. All that other stuff is just additional stuff. That point is the most important part. The fact that 10 months later he's found running from an SUV chock full of marijuana, 189 versus 183 packages of marijuana, is what brings that maybe he did, maybe he didn't, to yeah, it's more likely than not that he did. Well, yeah, but let's start from the source of this information. Where did it come from? Police reports. Yes. Police reports that are not considered reliable. And we're not talking about probable cause. Certainly in front of a magistrate judge or in front of a district court judge or whoever it is where you're presenting an affidavit, you're presenting a complaint, you're presenting an indictment to the grand jury, police reports are what are used. But the case law is clear. Police reports are not particularly reliable. And so you have the obligation of establishing more, not just, gee, there's probable cause here, these are police reports, but that it's more probable. You have eyewitnesses. Eyewitness identification has been challenged over and over by the Ninth Circuit. So what you're doing is as if you're trying to persuade the three judges here that there is enough to go forward on an indictment as opposed to preponderance of the evidence, that it's more likely true than not because police officers are accurate. I would respectfully disagree, Your Honor. First of all, unsworn police reports may absolutely be considered by a sentencing judge. They're not conclusive. And the only thing that's in these police reports they certainly can be considered as long as they're reliable. You have to corroborate them. There's no question the police officers on the whole act in good faith and try to do their job. But you have to have more. The sentencing is going to make a difference. The police officers here didn't stretch. There was no eyewitness. They couldn't see who it was. They didn't try to tag him. It struck me that the police reports were quite straight up and didn't link him where they couldn't really link him. And that's one of the reasons it's reliable is that they're not making, they're not jumping to conclusions. They're not stretching the truth. They give the straight-up facts, which are uncontested. There's no contest here. It's a question of whether we think it's enough, right? It's whether Judge DuBras' inference was illogical, implausible, or not supported by the record. And clearly that inference that, all right, the second time. Is it really illogical, implausible? Is that the question? The standard of review is is there sufficient evidence based upon the police reports alone that rely on eyewitness testimony that is uncorroborated? Is that a preponderance of the evidence? Now, tell me everything that you have that corroborates the police reports alone, that police officers acting in good faith, giving as much as they can, relying on eyewitness accounts of several different agents. Why is that preponderance of the evidence? Let me back up to answer that. Judge DuBras made the factual inference that, yes, Salerio Ramirez was the one that was driving that inference the first time. That factual finding is reviewed under clear error, and that's where I'm getting the illogical, implausible. It's a very deferential test, and only if it's illogical or implausible or completely not supported by the record should it be overturned. His inference, then, that it was Salerio Ramirez the first time, the finding of that based upon the police reports here, again, the fact that he was found 75 yards away from an SUV chock full of marijuana is not in dispute. That's not contested. Nobody's saying that that wasn't Salerio Ramirez. Nobody was saying that. Counsel, we have to figure out whether the trial court was justified in treating it as a prior. He essentially treated this as a prior. He treated it as an aggravating factor, yes. Well, he called it a prior, right. A prior, yeah, prior act of smuggling marijuana. Right, and that's the whole issue, right? We have to figure out whether that was sufficiently supported. Yes, and the standard of proof was preponderance of the evidence. Right, more likely than not. More likely than not. So then what do we have? What did he look at? He looked at the police reports, and the police reports are eyewitness statements of several different agents. Yes, and there's absolutely no reason in there on the face of those police reports to believe that what they're reporting is inaccurate or unreliable in any way whatsoever. They don't jump to conclusions. They don't even say, we think it was Salerio. All they say is, we followed an SUV. It stopped. When we came upon it, the driver had already bailed out, and the door was open. We followed down an alley 75 yards, and we found Salerio Ramirez. We arrested Salerio Ramirez. That's it. There's nothing unreliable about that. The question is, I agree with you, there's nothing to say they're not telling the truth. The question is, can you corroborate the fact, because on the face of it, once again, they are eyewitness accounts of several different agents. And pulling all of that together, why does that make it reliable such that it is more probable than not? Let me point to, first of all, a collaborating fact that maybe Judge LaBral saw that that's not in the record. We have a defendant here who is- Not in the record. Why are we- Well, no, it's in the record. I'm sorry, but he didn't explain it. But what we have is a defendant who's at sentencing saying, I live in Mexico. I've lived in Mexico for the last two years with my wife and kids, working at a slaughterhouse. That's me. I'm a good guy. And then you have this report where Salerio Ramirez is found in the United States, Calexico, at between 630 and 7 in the morning, hiding behind some trash cans. That's a corroborating fact right there. What is he doing in the United States? Of all the border towns on the southwestern border, of all the people, why is it Salerio Ramirez is 75 yards away from that SUV full of marijuana, when 10 months later, who is it again running from the SUV full of marijuana? It's Salerio Ramirez. So there is corroborating evidence. It is evidence beyond- It is evidence that Judge Roth found clear and convincing, but didn't even need to go that far. I understand your argument. Thank you. Thank you. Thanks. I had your pleasure, Your Honor. What? I had your pleasure. I'm happy to- I've been way over my time, so I'm happy to submit, or I can make a few points in rebuttal, as the Court wishes. No. What do you want to do? Well, I would just briefly note just one point, and then I think- Make it quick. I just wanted- I know Judge Silver was concerned with the Felix case, so I'll just tell you directly from it that in that case, it says, and I'll just quote, in any event, our determination in the District Court properly relied on computer printouts coupled with failure to present any evidence on the issue. So the Court there had- Computer printouts. PSR, computer printouts, and no denial. So those are the facts, the direct quote from Felix. Thank you very much, Your Honor. Look, why don't we do this? It would be helpful to me because I don't take a lot of notes. Some of the cases that I think you've talked about may not be in your briefs. All of them are in the briefs. All in the briefs. Yes, Your Honor. But write those names down in the citations and leave them with the clerk. Just the ones we've just described? The ones we've talked about. Okay. I'll do my best. Cruz, Berry, Felix. Cruz, Berry, Felix, and Gunning, I believe, was another one. Marin Cuevas. Marin Cuevas, yes. Just write those down. Okay. Thank you. Yeah. Cruz, Berry, Gunning. Okay. Thank you, Your Honor. Does government like to do the same thing? We can make a joint list. We can work together. Well, you're both real good lawyers. Yeah, definitely. Just trying to do the right thing in life. Thank you very much. All right. We'll take up the next matter. Tillotson v. Jimenez.
judges: Silver, Pregerson, Christen